| | |
|---|---|
| Mason Hermann, | Case No. |
| Plaintiff, | |
| v. | **Complaint** |
| City of Minneapolis. | **Jury Trial Demanded** |
| Defendant. | |

For his Complaint, Plaintiff Mason Hermann ("Hermann") states and alleges upon knowledge, information, and belief as follows:

## Introduction

1.     This is an action for money damages due to Officer John Doe ("Doe") violating Hermann's First Amendment rights, as incorporated by the Fourteenth Amendment, under color of state law by subjecting Hermann to First Amendment retaliation.  This action also involves the City of Minneapolis's ("City") widespread custom and practice of retaliating against individuals like Hermann who exercise their First Amendment Rights.

## Jurisdiction and Venue

2.     Hermann brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the First and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343 (a)(3).  These statutory and constitutional provisions confer original jurisdiction over this matter to this Court.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the District of Minnesota.

## Parties

4.     Plaintiff Hermann is a citizen of the United States who, at the time of this incident, was a 20-year-old man residing in Woodbury, Minnesota.

5.     Defendant City was at all relevant times a duly incorporated municipal entity under the laws of Minnesota, and was at all relevant times, the political and corporate body charged with training, control, and supervision over all Minneapolis Police Department ("MPD") personnel.

6.     MPD is the City agency through which the City fulfills its policing functions.

## Facts

**A.     Hermann engaged in peaceful protests in response to George Floyd's killing and MPD's history of misconduct.**

7.     On May 25, 2020, MPD Officer Derek Chauvin ("Chauvin") killed George Floyd ("Floyd").

8.     Floyd's murder was captured on video and was viewed around the world.

9.     The brutality of Floyd's death ignited international protests and national discussions on race relations and policing.

10.     For several days after Chauvin murdered Floyd, protesters gathered outside MPD's Third Precinct on Lake Street in Minneapolis.

11. The Third Precinct is the home precinct for Chauvin and the other officers involved in Floyd's death.

12. On May 27, 2020, Minneapolis Mayor Jacob Frey told residents that he understood their anger, stating, "what we need now in terms of protesting is peaceful protesting . . . and we need to be making sure that we're looking out for the safety of our residents."

13. That same day, people gathered on Lake Street and were calm and non-violent, singing and holding handmade protest signs.

14. That afternoon, Hermann joined the Lake Street crowd to peacefully exercise his First Amendment right to protest the City's police misconduct, including the unlawful killing of Floyd and other Black individuals by the MPD.

15. Hermann and others in the crowd were engaging in chants critical of law enforcement.

16. No curfew or other restrictions were in place in Minneapolis on May 27, 2020.

17. The image below depicts the Third Precinct, MPD officers, and the crowd of peaceful individuals:



18.     As depicted in the photograph, numerous MPD officers were perched on the Third Precinct's roof, donning protective tactical gear like helmets, safety glasses, shields, and 40-millimeter "less lethal" tactical launchers.

19.     No one was rioting or throwing projectiles at the MPD officers at the time Hermann participated in his peaceful protest.

**B.     Without warning and in retaliation for Hermann's protected speech, John Doe Officer fired a 40-millimeter projectile directly at Hermann's head.**

20.     Without warning, MPD officers began firing at the crowd with 40-millimeter impact projectiles, tear gas, and other "less lethal" munitions.

21.     Officer Doe was an MPD officer acting within the course and scope of his duties with the City at all relevant times.

22.     Doe was armed with a 40-millimeter "less lethal" launcher.

23.     These launchers are extremely accurate and MPD Officers typically strike the intended target area of a subject's body.

24.     A 40-millimeter less lethal munition has the potential to kill a subject if the projectile strikes the subject in the head.

25.     MPD officers, including Doe, had been trained that a 40-millimeter less lethal munition has the potential to kill a subject if the projectile strikes the subject in the head.

26.     At approximately 6:50 p.m., Doe aimed and fired his weapon at Hermann.

27.     Doe intentionally aimed at Hermann's head.

28.     Doe hit Hermann with a 40-millimeter "less lethal" projectile on the left side of Hermann's head.

29.     Doe used deadly force against Hermann by shooting a 40-millimeter projectile directly at Hermann's head.

30.     Doe shot Hermann with the projectile in retaliation for and to chill Hermann's further speech.

31.     No one, including Doe, had given Hermann any warning prior to Doe aiming and firing his weapon.

32.     No one, including Doe, had given Hermann any commands prior to Doe aiming and firing his weapon.

33.     Hermann was standing in an unrestricted area when Doe shot him.

34.     The area was not chaotic or dangerous to MPD officers, including Doe.

35.     Herman was not suspected of a crime.

36.     Hermann never refused to comply with officers' commands because no commands had been given.

37.     Hermann never resisted arrest or attempted to evade arrest by flight.

38.     Hermann was not armed with any weapon.

39.     Hermann never displayed any aggression toward any officer or individual.

40.     Hermann never took any menacing action toward any officer or individual.

41.     Photographs of the round Doe shot at Hermann are depicted below:



**C.      Hermann suffered significant injuries from Doe's use of excessive deadly force.**

42.     After being struck by the round Doe shot, Hermann fell to the ground and started bleeding from his head.

43.     Being struck by the projectile caused Hermann to feel lightheaded and to experience ringing in his ears.

44.     As Hermann lay bleeding, a few bystanders began to bandage his head in a dressing, as depicted below:



45.     As Hermann traveled home that evening, the adrenaline from the physical impact wore off, he noticed a progressive decline in his neurological functioning.

46.     Once home, his condition continued to deteriorate.

47.     At approximately 1:40 a.m., Hermann was transported to the River Falls Area Hospital's emergency department ("River Falls Hospital").

48.     Hermann experienced a severe headache and nausea.

49.     Hermann's eyes were not tracking normally.

50.     Hermann also had difficulty putting sentences together.

51.      Hermann had trouble answering the medical care team's questions, at one point giving them his last name as his first.

52.     Hermann was found to have suffered a 3-centimeter curvilinear laceration to his left parietal scalp, an intercranial hemorrhage, a skull fracture, and a concussion.

53.     Doe's 40-millimeter projectile caused Hermann's injuries.

54.     Hermann's scalp laceration was closed with three medical staples, as depicted below.



55. Due to the severity of his injuries, Hermann was transported by ambulance from River Falls Hospital to Regions Hospital in St. Paul.

56. Hermann arrived at approximately 4:30 a.m. for further evaluation and care.

57. Hermann was diagnosed with a traumatic brain injury.

58. Since sustaining his injuries, Hermann has experienced a decrease in his mental health.

59. Hermann's daily functioning and interpersonal relationships have also been negatively impacted.

60. Since sustaining his injuries, Hermann has struggled with short-term memory loss, headaches, and fatigue.

61. Hermann has received significant medical care to treat his injuries.

## **The City's History of Relevant Unlawful Conduct**

62. The City and MPD have a well-documented history of using excessive force, threats of force, or otherwise unlawful retaliatory conduct in response to police criticism or otherwise lawful First Amendment conduct.

63. Despite numerous complaints and lawsuits arising from MPD's use of excessive force and retaliatory actions, the City of Minneapolis has consistently failed to properly investigate or discipline officers involved in such conduct. The City's failure to hold officers accountable has fostered a culture where unconstitutional conduct is not only tolerated but expected, further emboldening officers to violate the rights of individuals engaged in protected speech.

64.     The pattern of retaliatory conduct by MPD officers is not limited to protest situations. MPD officers have retaliated against individuals who criticize police actions in routine interactions, such as traffic stops and community engagements. This retaliation is often immediate, involving threats of arrest or physical force, further demonstrating the widespread nature of this unconstitutional conduct.

65.     Although each of the cases detailed below do not necessarily allege the specific constitutional theories at issue in this case, the conduct by MPD officers would have allowed the plaintiffs to pursue First Amendment retaliation claims as a matter of strategy.

66.     In *Flowers v. Stoll*, No. 04-cv-3959 (ADM/AJB) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed Aug. 30, 2004) (incorporated herein by reference). The City paid $15,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

67.     In *Thomas v. Villamor*, No. 05-cv-0010 (PAM/JSM) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed Jan. 4, 2005) (incorporated herein by reference). The City paid

$14,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

68. In *Hall v. Burns*, No. 06-cv-4567 (JNE/JJG) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed Nov. 21, 2006) (incorporated herein by reference). The City paid $12,500.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

69. In *Jones v. City of Minneapolis*, No. 07-cv-3577 (DWF/SER) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1-2 (filed Aug. 2, 2007) (incorporated herein by reference). The City paid $15,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

70. In *Ganley v. Lilliard*, No. 08-cv-5048 (RHK/JSM) (D. Minn.), MPD engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment

conduct directed towards MPD officers. *See* Complaint at ECF No. 1-2 (filed Aug. 28, 2008) (incorporated herein by reference). The City paid $70,800.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

71.     In *Powers v. City of Minneapolis*, No. 09-cv-2603 (DWF/JSM) (D. Minn.), a MPD officer engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards that MPD officer. *See* Complaint at ECF No. 1-2 (Sept. 23, 2009) (incorporated herein by reference). The City paid $10,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 5, 2023).

72.     In *Robinson v. Lazarchic,* No. 09-cv-3113 (PAM/FLN) (D. Minn.), a MPD officer engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards that MPD officer. *See* Complaint at ECF No. 1 (Nov. 6, 2009) (incorporated herein by reference). The City paid $35,002.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

73. In *Williams-Brewer v. City of Minneapolis,* No. 09-cv-3524 (JRT/JJG) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed Dec. 9, 2009) (incorporated herein by reference). The City paid $20,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

74. In *Williams v. Voss,* No. 10-cv-2092 (ADM/TNL) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1-1 (filed May 19, 2010) (incorporated herein by reference). The City paid $24,500.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

75. In *McClennon v. Kipke,* 10-cv-2598 (RHK/JJK) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed June 24, 2010) (incorporated herein by reference). The City paid $5,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at

https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

76. In *Robinson v. City of Minneapolis*, No. 10-cv-3067 (RHK/JJK) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed July 20, 2010) (incorporated herein by reference). The City paid $15,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

77. In *Lyons v. Boelter,* No.10-cv-3871 (ADM/JJK) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Sept. 8, 2010) (incorporated herein by reference). The City paid $9,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

78. In *Lee v. Macias*, No. 11-cv-1945 (DWF/FLN) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed July 18,

14

2011) (incorporated herein by reference). The City paid $68,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

79.     In *Nguyen v. Lokke,* No. 11-cv-3225 (PJS/SER) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1-3 (filed Nov. 1, 2011) (incorporated herein by reference). The City paid $91,020.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

80.     In *Yzaguirre v. Raichert,* No. 12-cv-130 (JRT/AJB) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers.  *See* Complaint at ECF No. 1 (filed Jan. 17, 2012) (incorporated herein by reference).  The City paid $3,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

81.     In *Dickson v. Stewart*, No. 12-cv-845 (JNE/JSM), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of

plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers.  *See* Complaint at ECF No. 1-2 (filed Apr. 3, 2012) (incorporated herein by reference).  The City paid $65,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

82.     In *Thompson v. Barnes,* No. 12-cv-2168 (MJD/JSM) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers.  *See* Complaint at ECF No. 1-2 (filed Sept. 5, 2012) (incorporated herein by reference).  The City paid $43,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

83.     In *Austin v. Siedl*, No. 13-cv-407 (PJS/SER), MPD  officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers.  *See* Complaint at ECF No. 1-2 (filed Feb. 19, 2013) (incorporated herein by reference).  The City paid $146,107.50 to settle that lawsuit.  *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

84.     In *Lang v. City of Minneapolis,* No. 13-cv-3008 (DWF/TNL) (D. Minn.),
MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment
rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First
Amendment conduct directed towards MPD officers.  *See* Complaint at ECF No. 1 (filed
Nov. 4, 2013) (incorporated herein by reference).  The City paid $43,000.00 to settle that
lawsuit. *See* Officer Conduct Payouts Dashboard, available at
https://www.minneapolismn.gov/government/government-data/datasource/officer-
payouts-dashboard/ (last accessed June 10, 2023).

85.     In *Milton v. Barze,* No. 15-cv-1930 (RHK/TNL) (D. Minn.), MPD officers
engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a
result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment
conduct directed towards MPD officers.  *See* Complaint at ECF No. 1 (filed Apr. 14,
2015) (incorporated herein by reference).  The City paid $82,000.00 to settle that lawsuit.
*See* Officer Conduct Payouts Dashboard, available at
https://www.minneapolismn.gov/government/government-data/datasource/officer-
payouts-dashboard/ (last accessed June 10, 2023).

86.     In *Gauthier v. Boyd,* No. 15-cv-3068 (RHK/KMM) (D. Minn.), MPD
officers engaged in retaliatory conduct that violated the plaintiff's First Amendment
rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First
Amendment conduct directed towards MPD officers.  *See* Complaint at ECF No. 1 (filed
July 15, 2015) (incorporated herein by reference).  The City paid $86,500.00 to settle that
lawsuit. *See* Officer Conduct Payouts Dashboard, available at

https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

87.     In *Garcia v. Lehner,* No. 15-cv-3214 (SRN/HB) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers.  *See* Complaint at ECF No. 1 (filed Aug. 5, 2015) (incorporated herein by reference).  The City paid $360,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

88.     In *Ferguson v. Thunder,* No. 17-cv-1110 (PJS/TNL) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers.  *See* Complaint at ECF No. 1 (filed April 10, 2017) (incorporated herein by reference).  The City paid $25,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

89.     In *Gaines v. City of Minneapolis,* No. 18-cv-0838 (PAM/HB) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers.  *See* Complaint at ECF No. 1 (filed

Mar. 26, 2018) (incorporated herein by reference). The City paid $58,829.10 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

90.     In *Johnson v. Wolff,* No. 18-cv-888 (ECT/TNL) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1-2 (filed Mar. 29, 2018) (incorporated herein by reference). The City paid $37,500.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

91.     In *McKinnies v. City of Minneapolis,* No. 18-cv-2738 (NEB/BRT) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed Sept. 24, 2018) (incorporated herein by reference). The City paid $25,000 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

92.     In *LeMay v. Mays,* No. 19-cv-2463 (JRT/BRT) (D. Minn.), MPD officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a

result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed Sept. 6, 2019) (incorporated herein by reference). The City paid $150,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

93.     In *Khalif v. City of Minneapolis,* No. 20-cv-1354 (NEB/TNL) (D. Minn.), MPD officers engaged in retaliatory conduct in June of 2019 that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed June 11, 2020) (incorporated herein by reference). The City paid $30,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

94.     In *Holmes v. Keyes*, No. 22-cv-348 (WMW/DTS) (D. Minn.), MPD officers engaged in retaliatory conduct in May 2018 that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 2 (filed Feb. 7, 2022) (incorporated herein by reference). The City paid $60,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

95.     In *Pope v. Chauvin*, No. 22-cv-1434 (ECT/TNL) (D. Minn.), MPD officers, including Derek Chauvin, engaged in retaliatory conduct in September 2017 that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards MPD officers. *See* Complaint at ECF No. 1 (filed May 31, 2022) (incorporated herein by reference). The City paid $7,500,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov /government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

96.     In *Bligh v. Ruden*, 23-cv-95 (KMM/JFD), MPD officers engaged in retaliatory conduct and used excessive force towards a non-violent protestor who was engaged in lawful criticism of MPD officers. The City paid $200,000.00 to resolve that matter.

97.     In *Williams v. City of Minneapolis*, 23-cv-1950 (NEB/DTS), former MPD Officer Chauvin and others threatened Plaintiff Donald Williams with unlawful uses of force in retaliation for Williams criticizing the MPD officers' use of unlawful deadly force on George Floyd. The City paid $150,000.00 to resolve that matter.

98.     On May 26, 2020, the day after MPD Officer Chauvin murdered George Floyd, Muna Ahmed was engaging in First Amendment protected conduct when an MPD officer fired a 40mm round that struck Ahmed in the head, knocking her unconscious, even though Ahmed was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round. The City settled this case for $245,000.

99.     On May 27, 2020, Ana Maria Gelhaye was engaging in First Amendment protected conduct when an MPD officer fired a 40mm round that struck Gelhaye in her right eye, causing a permanent injury, even though Gelhaye was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round. The City settled this case for $900,000.

100.     Also on May 27, 2020, Jamie Bunkholt was engaging in First Amendment protected conduct when an MPD officer fired a 40mm round that struck Bunkholt in the back of the head, causing a traumatic injury, even though Bunkholt was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round. The City settled this case for $500,000.

101.     Also on May 27, 2020, David Liliberte was engaging in First Amendment protected conduct when an MPD officer fired a 40mm round that struck Laliberte in the face, causing a permanent injury, even though Laliberte was not engaged in any assault or damage to property at or around the time he was struck with a 40mm round. The City settled this case for $65,000.

102.     Also on May 27, 2020, Abdi Adam was engaging in First Amendment protected conduct when an MPD officer fired a 40mm round that struck Adam in the forehead, causing neurological injuries, even though Adam was not engaged in any assault or damage to property at or around the time he was struck with a 40mm round. The City paid $365,000 to settle this case.

103.     On May 28, 2020, Ethan Marks was engaging in First Amendment protected conduct when MPD Officer Benjamin Bauer shot Marks in the eye with a

40mm round, blinding Marks in that eye, even though the use of deadly force against Marks was not justified at or around the time he was struck with a 40mm round. The City paid $2,400,000 to resolve that claim.

104.    Also on May 28, 2020, Norman Truman was engaging in First Amendment protected conduct when an MPD officer fired a 40mm round that struck Truman in the head, causing a fractured skull, a traumatic brain injury, and an internal brain hemorrhage, even though Truman was not engaged in conduct justifying deadly force at or around the time he was struck with a 40mm round. The City settled this case for $15,000.

105.    Also on May 28, 2020, Kimani Allen was engaging in First Amendment protected conduct when an MPD officer deployed a less-lethal munition that struck Allen, even though Allen was not engaged in any assault or damage to property at or around the time he was struck. The City settled this case for $22,000.

106.    Also on May 28, 2020, Hillary Richard was engaging in First Amendment protected conduct when MPD Officer Oscar Macias shot Richard with a 40mm round in the wrist while her hands were raised beside her head and she was serving as a Legal Observer with the National Lawyers Guild. Richard was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round. The City settled this case for $45,000.

107.    On May 29, 2020, Graciela Cisneros was engaging in First Amendment protected conduct when an MPD officer shot Cisneros in the face with a 40mm round,

even though Cisneros was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round. The City settled this case for $57,900.

108. On or about May 29, 2020, journalist Linda Tirado was engaging in First Amendment protected conduct when an MPD officer fired a 40mm round that struck Tirado in the eye, blinding Tirado in that eye, even though Tirado was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round. The City settled this case for $600,000.

## **The DOJ Investigation**

109. On April 21, 2021, the Department of Justice ("DOJ") opened a pattern or practice investigation of MPD and the City.[1]

110. On June 16, 2023, the DOJ announced its findings that there was reasonable cause to believe that the City and MPD engage in a pattern or practice of conduct that deprives people of their rights under the Constitution and federal law.

111. The DOJ found, as relevant here, that "MPD uses excessive force, including unjustified deadly force and other types of force" and "that MPD violates the rights of people engaged in protected speech."

112. The DOJ also found "persistent deficiencies in MPD's accountability systems, training, supervision, and officer wellness programs, which contribute to the violations of the Constitution and federal law."

---

[1] *See* United States Dep't of Justice Civil Rights Div. & United States Attorney's Office D. Minn. Civil Div., *Investigation of the City of Minneapolis and the Minneapolis Police Department*, ("DOJ Findings"), *available at* https://www.justice.gov/d9/2023-06/minneapolis_findings_report.pdf (last accessed Nov. 21, 2023).

113.    The DOJ also found that "For years, MPD used dangerous techniques and weapons against people who committed at most a petty offense and sometimes no offense at all.  MPD used force to punish people who made officers angry or criticized the police."

114.    When discussing the unreasonable bodily force that MPD consistently uses, the DOJ found that "MPD officers aggressively confront people suspected of a low-level offense—or no offense at all—and use force if the person does not obey immediately. Officers sometimes used force against people who were already compliant[.]"

115.    The DOJ also found that "[i]n many instances, MPD officers shove adults and teens—including bystanders—for no legitimate reason.  Such uses of bodily force are retaliatory and violate the Fourth Amendment."

116.    When discussing MPD's pattern or practice of violating the rights of people engaged in protected conduct, the DOJ found that MPD violates the First Amendment by, as relevant here, retaliating against protesters and penalizing people who challenge or question MPD during stops and calls for service.

### Count I *Monell* Violation – 42 U.S.C. § 1983
### (Plaintiff v. the City of Minneapolis)

117.    Hermann hereby realleges and incorporates each paragraph as though fully set forth herein.

118.    The facts alleged detail that the City of Minneapolis, at all times acting under color of law, engaged in a continuing, widespread, persistent pattern of unconstitutional misconduct via MPD officers.

119.    The City, with deliberate indifference to the rights of Hermann and others similarly situated as Hermann, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that created an atmosphere where MPD officers regularly engaged in retaliation in violation of the First Amendment, including through unlawful uses of force and deadly force.

120.    The City's employees regularly turned a blind eye retaliation by MPD officers.

121.    These customs, patterns, or practices were the moving force behind Hermann's injuries.

122.    As a direct and proximate result of the acts and omissions, systematic flaws, policies and customs of defendant City of Minneapolis, Hermann suffered great bodily and mental harm, medical bills, lost wages, and other items of damage in an amount to be determined by the jury.

123.    Hermann is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

124.    Hermann seeks equitable remedies, including but not limited to permanent injunctive relief, to cease the unconstitutional or otherwise unlawful policies, practices, and customs of the City and its police department as described herein.

### Count II – *Canton* Violation – 42 U.S.C. § 1983
### (Plaintiff v. the City of Minneapolis)

125.    Plaintiff hereby realleges and incorporates each paragraph as though fully set forth herein.

126. The facts alleged detail that the City of Minneapolis, at all times acting under color of law, engaged in a continuing, widespread, persistent pattern of unconstitutional misconduct via MPD officers.

127. The City, with deliberate indifference to the rights and safety of people present in Minneapolis and/or engaging in lawful conduct and/or protected activity, failed to properly train MPD officers and failed to adopt, implement, or require adherence to state and federal law, appropriate policies, and regulations related to retaliation in violation of the First Amendment.

128. For example, the City failed to train officers on respecting the constitutional rights of individuals during crowd control and protest situations, particularly the First Amendment right to protest. The City's failure to emphasize the protection of constitutional rights in its training programs, and tolerance for unlawful and deadly force to deter speech, has resulted in the widespread retaliatory conduct by MPD officers, including the actions that led to Hermann's injuries.

129. The City, by such conduct, demonstrated deliberate indifference and a protracted failure to care for the rights and safety of people present in Minneapolis and/or engaging in lawful conduct and/or protected activity.

130. This failure to train was the moving force behind Hermann's injuries.

131. As a direct and proximate result of the acts and omissions, systematic flaws, and training failures of defendant City of Minneapolis, Hermann suffered great bodily and mental harm, medical bills, lost wages, and other items of damage in an amount to be determined by the jury.

132.    Hermann is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

133.    Hermann seeks equitable remedies, including but not limited to permanent injunctive relief, to cease the unconstitutional or otherwise unlawful policies, practices, and customs of the City and its police department as described herein.

134.    Plaintiff hereby demands a trial by jury.

## Prayer for Relief

WHEREFORE, Plaintiff Mason Hermann prays for judgment against Defendant City of Minneapolis as follows:

1.    As to Count I, a money judgment against the City for special and compensatory damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and prejudgment interest, and equitable remedies including but not limited to permanent injunctive relief to cease the unconstitutional or otherwise unlawful policies, practices, and customs of the City and its police department as described herein;

2.    As to Count II, a money judgment against the City for special and compensatory damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and prejudgment interest, and equitable remedies including but not limited to permanent injunctive relief to cease the unconstitutional or otherwise unlawful policies, practices, and customs of the City and its police department as described herein; and

3.      For such further relief as this Court deems just and equitable.

**STORMS DWORAK LLC**

Dated: September 29, 2024          /s/ Jeffrey S. Storms
                                                        Jeffrey S. Storms, #387240
                                                        Ryan O. Vettleson, #312915
                                                        Naomi E. H. Martin, #402332
                                                        222 South Ninth Street, Suite 470
                                                        Minneapolis, MN 55402
                                                        Telephone: 612.455.7050
                                                        jeff@stormsdworak.com
                                                        ryan@stormsdworak.com
                                                        naomi@stormsdworak.com

                                                        *Attorneys for Plaintiff*